FILED
2014 Sep-15  PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**JEFFREY COZZI,**

      **Plaintiff**

    **v.**                      **Case No.**

**CITY OF BIRMINGHAM,**
**G.H. MONTGOMERY,**
**CEDRICK THOMAS,**
**ROBBERY DETECTIVE JONES**
**and ROBBERY DETECTIVE**
**LAMPLEY,**

      **Defendants**

## COMPLAINT

## INTRODUCTORY STATEMENT, PARTIES AND JURISDICTION

1.    This is an action brought by plaintiff, Jeffrey Cozzi (Cozzi) against defendants for violation of various of his constitutional rights and other federally-protected rights. He claims the individual defendants violated his right, under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures, made applicable to the states via the Due Process clause of the Fourteenth Amendment. This action is brought pursuant to 42 U.S.C. § 1983 which provides a cause of action for one whose constitutional rights are violated under color of state law. He further asserts a claim against the City of Birmingham pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (ADA), and the

Rehabilitation Act of 1973, 29 U.S.C. § 794 (Rehabilitation Act), asserting that his right to reasonable accommodation for his disability was violated by City of Birmingham employees when he was arrested.

2.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983 as well as 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343(a)(3) (civil rights), and the ADA.

3.      Venue is proper in this Court as all actions complained of herein occurred within the Northern District of Alabama.

4.      Plaintiff, Jeffrey Cozzi (Cozzi), is an adult citizen of the United States and of the State of Alabama. He currently resides in Albertville, Alabama in the Northern District of Alabama. At the time of the events complained of herein, he resided in Pinson, Alabama, also in the Northern District of Alabama.

5.      Defendant, City of Birmingham (Birmingham), is a municipal corporation located within the Southern Division of the Northern District of Alabama

6.      Defendant G.H. Montgomery (Montgomery) was, at all times relevant a robbery detective employed by Birmingham. On information belief, he was the detective chiefly responsible for investigating the robberies that led to Cozzi's arrest and this litigation. All actions he undertook that are complained of herein were done within the line and scope of that employment and were, therefore, done under color of state law. He is sued in his individual capacity.

-2-

7.      Defendants, Cedrick Thomas (Thomas), Jones and Lampley, whose first names are unknown to Cozzi, were at all times relevant, robbery detectives employed by Birmingham who participated in actions that led to Cozzi's arrest and this litigation. All actions they undertook that are complained of herein were done within the line and scope of that employment and were, therefore, done under color of state law. They are sued in their individual capacities.

## **FACTS**

8.      On, or about, May 15 and 16, 2013, robberies occurred at two pharmacies, one a Walgreens, the other a Rite Aid, located in Birmingham. Both were recorded on surveillance cameras and involved an individual covering his face with a surgical mask, handing a note demanding drugs to a pharmacist and threatening to set off a bomb he had rigged if his demands were not met. On neither occasion did the perpetrator brandish a weapon nor were any explosives found at either location. The surveillance videos were shown to the public via the "Crimestoppers" program, conducted by the Jefferson County Sheriff's Department, which publicizes unsolved crimes and seeks to elicit information from the public that may help to solve them. The program allows members of the public to provide information anonymously. Because of the similarities, the individual defendants believed and asserted that both were committed by the same individual.

9.     On May 16, Justin Hensen, an employee at Rite Aid who witnessed the robbery there, was shown a photo array of suspects and identified an individual named James Hill as the person who had committed that robbery. He was shown the photo array at Montgomery's behest. Cozzi does not know whether any of the defendants was present when Mr. Hensen identified the robber.[1]

10.     At some point, an anonymous informant contacted the Jefferson County Sheriff's Department, alleging that Cozzi was the individual on the two surveillance videos. The anonymous caller provided Cozzi's name and address, photographs of him and described the vehicle he drove.  The caller alleged that Cozzi had a serious drug addiction and that he worked as a car painter, and therefore had access to masks similar to those used by the robber. The informant also claimed to recognize Cozzi because of his "unique walking style." The latter was the one distinguishing characteristic the caller described. However, the surveillance cameras each took a series of still pictures, approximately one second apart, that were too choppy to allow any viewer to determine a person's gait or "walking style" or to distinguish it from any other individual's gait or "walking style." Montgomery had, or in the competent execution of his duties should have, viewed the surveillance videos and therefore

_____

[1]
        According to the United States Department of Justice, the best practice for officers conducting lineups, whether live or with photographs, is for the individual conducting the lineup not to know the identity of the suspect. That, however, is not the general practice of the Birmingham Police Department.

knew, or should have known, that they did not depict the robber's gait or "walking style." The caller's claims were conveyed to Montgomery by the Jefferson County Sheriff's Department.

11.     Despite the fact that Mr. Hensen had already positively identified Mr. Hill as the robber, and despite the fact the defendants believed both robberies were committed by the same person, Montgomery directed a supposed "investigation" of the information that had been provided by the anonymous caller. It consisted of an Officer, John Osborn, going to the address provided by the caller and observing the vehicle the caller described as belonging to Cozzi in the driveway. No effort was made to determine if Cozzi was working as a car painter. If such an effort had been made, it would have been determined that he had not done so for several months. At no time during the course of their "investigation" into the caller's allegations did Officer Osborn, or any of the defendants, observe his "walking style," nor did they obtain any specific description of that "style" from the caller other than the clearly inaccurate allegation that the videos showed it. No effort was made to determine where Cozzi worked or what his working hours were. Such an investigation would have confirmed that he was at work at the times the robberies occurred.

12.     On information and belief, no effort was made, other than that described above, to evaluate the anonymous caller's credibility.

13.     Thomas then sought, and secured, a search warrant based upon the

informant's allegations and the superficial investigation that ensued. Included in the affidavit in support of the warrant was the allegation concerning Cozzi's distinctive "walking style," an allegation that was clearly incapable of verification from the videos. Missing from the affidavit was any mention of the prior identification of Mr. Hill. Cozzi alleges that, had these crucial pieces of information been included, the search warrant would not have been authorized due to a lack of sufficient probable cause.

14.    On, or about, May 20, 2013, four days after Mr. Hensen positively identified Mr. Hill, Thomas, Jones and Lampley went to Cozzi's residence to execute the search warrant, stopping Cozzi, who was in his truck in front of his house. He was pulled out of his truck at gunpoint and forced to lay on the ground. Cozzi complied with all the defendants' demands. Nevertheless, one of them brought his knee onto Cozzi's back with great force despite Cozzi advising defendants he was disabled as was confirmed by the handicapped tag on his truck, clearly visible to defendants. When he told defendants he was disabled, he was told to shut his mouth. Cozzi suffers from degenerative disc disease and has had five back surgeries.

15.    Cozzi consented to a search of his truck, which produced no evidence of any crime. Defendants then executed the warrant on the house, which likewise produced no additional evidence connecting Cozzi to the robberies. They rolled Cozzi's safe down the stairs, damaging both the safe and the guns that Cozzi kept

locked inside it. After they did so, they asked Cozzi for the combination, which he provided and which he would have provided prior to their damaging the safe and its contents. No additional evidence connecting Cozzi to the robberies was produced by that search. Defendants did take possession of another safe, belonging to Cozzi's housemate, for which he could not provide a combination.

16.     Thus, defendants had no additional evidence that Cozzi had committed either robbery then they had when they arrived at his residence or when they sought the search warrant. Presumably, they sought the search warrant because they did not have sufficient probable cause to arrest him based upon the unsubstantiated claims of an anonymous caller (irrespective of the omitted information) and they were hoping to find such evidence by searching his home. Cozzi alleges that, based on the lack of probable cause to arrest him prior to the search of his premises and the lack of any additional evidence found as a result of the search of his home and the consented-to search of his truck, they lacked even arguable probable cause to arrest him.

17.     Cozzi, despite his physical disability, was placed in the back of the police car in shackles, with his hands cuffed behind his back. As a consequence, he was unable to balance himself and was buffeted around, causing further injury and pain to his back.

18.     Cozzi was interviewed at police headquarters and denied any

involvement in the robberies. He was then transported to the jail, again buffeted around the back seat. Despite a request from Cozzi, the officer who was driving refused to identify himself or provide a badge number.

19.     After he was brought into the jail, the handcuffs were removed. He was asked by one of the correctional officers if he had ever been there before and said he had not and would rather be dead than be there for something he had no involvement in. The transporting officer, a police officer employed by Birmnigham, then replaced the handcuffs, pushed him out the door and put him back in the transporting vehicle to take him to the hospital, saying he would need it after the ride. Cozzi was again buffeted from one side of the car to the other with particular force at each turn.

20.     Before bringing him in for admission, the officer shackled Cozzi to the back door bars of the car, in view of everyone who passed by, smoked a cigarette and talked to a female police officer who had ridden with them and who apparently was dating the driver. The hospital has since billed Cozzi for the visit he did not request.

21.     Cozzi's former girl friend was with him when defendants arrived at his house. They discovered an outstanding arrest warrant for her from another municipality and therefore took her into custody. While she was in custody, one or more of the defendants questioned her and persuaded her to sign a statement incriminating Cozzi. The statement noted that the videos revealed Cozzi's supposedly distinctive gait and also alleged that the figure in the videos wore sneakers like those

worn by Cozzi and wore his socks the same way as does Cozzi.

22.     At some time subsequent to the arrest, the various drug store employees who were witnesses to the two robberies viewed photographic lineups which included Cozzi. None identified him as the robber.

23.     After approximately twenty-four hours in custody, there being no actual evidence that he was the person who robbed the pharmacies, Cozzi  was released. He does not know whether the witnesses were shown his photograph before or after his release.

24.     Cozzi has tattoos on the knuckles of his left hand, something clearly visible to defendants at the time of his arrest. No such tattoos are visible on the videos.

25.     At the time Cozzi was arrested, Birmingham was subject to a long-standing court order to seek a warrant from an independent magistrate based upon probable cause or to release arrested individuals within eight hours, absent exigent circumstances.  Despite this, he was held for some twenty-four hours.

26.     When Cozzi was released, defendants retained his shoes and socks. He therefore had to walk home in his bare feet, a distance of approximately eight miles.

27.     As a consequence of these events, Cozzi has suffered the following damages: he was incarcerated without probable cause for approximately twenty-four hours; he suffered significant pain from the aggravation of his back condition; he

suffered emotional distress exemplified by the fact that, for an extended period after his release, he was unable to sleep; he has incurred a hospital bill; his personal property was damaged and thereby lost value.

28.     Birmingham is a recipient of federal funds.

29.     By virtue of his back problems, Cozzi is an individual with a disability as defined by the ADA and the Rehabilitation Act. The individual defendants were apprised of his disability. He is therefore entitled to participate in and enjoy the benefits of any services or programs conducted by Birmingham free from discrimination and is entitled to reasonable accommodation for any disability he may have to avoid injury.

## FIRST CAUSE OF ACTION

30.     Cozzi adopts and incorporates by reference the preceding allegations.

31.     On information and belief, all the individual defendants were privy to all the information and documentation available in the case file.

32.     The individual defendants, separately and severally, adopted the allegations contained in the affidavit in support of the search warrant and chose not to include the fact of the positive identification of Mr. Hill as the robber or the fact that no "walking style" could be discerned from the surveillance videos. They consciously chose to omit these matters so as to secure the search warrant based upon

the misleading omissions. Had these facts been included, the search warrant would not have issued for lack of sufficient grounds.

33.     The individual defendants conspired together to cause the search warrant to be issued based on the misleading omissions contained in it.

34.     As a consequence of their actions, Cozzi was subjected to an unlawful search of his home wherein his property was damaged. He was also arrested as a part of the execution of the illegally-obtained search warrant and suffered the damages outlined above. Both the search and arrest violated his Fourth Amendment right not to be subjected to unreasonable searches or seizures.

**WHEREFORE,** Cozzi seeks the following damages against the individual defendants:

1.     Judgment against them, separately and severally, for such compensatory and punitive damages as a jury may award;

2.     Pursuant to 42 U.S.C. § 1988, his costs and reasonable attorney fees for pursuing this action; and

3.     Such other, further and different relief as to which he may be entitled.

## SECOND CAUSE OF ACTION

35.     Cozzi adopts and incorporates by reference the preceding allegations.

36.     Regardless of the validity of the search warrant, the search itself revealed

no further information to provide probable cause to arrest Cozzi and probable cause did not exist to arrest him. Thus, his arrest violated his Fourth Amendment right to be free of unreasonable seizures.

**WHEREFORE,** Cozzi seeks the following damages against the individual defendants:

1.      Judgment against them, separately and severally, for such compensatory and punitive damages as a jury may award;

2.      Pursuant to 42 U.S.C. § 1988, his costs and reasonable attorney fees for pursuing this action; and

3.      Such other, further and different relief as to which he may be entitled.

## THIRD CAUSE OF ACTION

37.      Cozzi was unarmed and fully cooperative with the defendants when they executed the search warrant. Despite that, he was pulled from his truck, thrown on the ground and kneed in his back. Such actions constitute excessive force, and therefore an unreasonable seizure in violation of his Fourth Amendment rights, even if there were grounds to restrain him while the search warrant was being executed.

**WHEREFORE,** Cozzi seeks the following damages against the individual defendants:

1.      Judgment against them, separately and severally, for such compensatory

and punitive damages as a jury may award;

2.    Pursuant to 42 U.S.C. § 1988, his costs and reasonable attorney fees for pursuing this action; and

3.    Such other, further and different relief as to which he may be entitled.

### FOURTH CAUSE OF ACTION

38.    Cozzi adopts and incorporates by reference the preceding allegations.

39.    Cozzi was discriminated against by the individual defendants and by the unknown transporting officer because of his disability. Further, he was deprived of the service and/or program of the City of Birmingham in that he was subjected to unnecessary pain and injury because of his disability in the course of his arrest and incarceration. Specifically, he was denied a reasonable accommodation for his disability. For example, he could have been handcuffed with his hands in front of his body so that might better brace himself or transporting officers could have simply driven slowly to avoid excessive jarring.

40.    Cozzi was denied reasonable accommodation for his disability despite requesting such.

41.    The actions of the individual defendants and the unknown transport driver were intentional and, pursuant to both the ADA and the Rehabilitation Act, constitute the acts of their employer, the City of Birmingham.

**WHEREFORE,** Cozzi seeks from all defendants, separately and severally, the

following relief:

1.      Judgment against Birmingham for such compensatory and punitive damages as a jury may award;

2.      Pursuant to the ADA and the Rehabilitation Act, his costs and reasonable attorney fees for pursuing this action;

3.      An order from this Court requiring Birmingham to establish policies and procedures to insure that individuals with disabilities subject to detention and arrest are afforded reasonable accommodations for their disabilities; and

4.      Such other, further and different relief as to which he may be entitled.


      /s/ David Gespass
      David Gespass
      GESPASS & JOHNSON
      P.O. Box 550242
      Birmingham, AL 35255-0242
      205-323-5966
      205-323-5990 (fax)
      pass.gandjlaw@gmail.com
      Attorney for Plaintiff

***PLAINTIFF  DEMANDS TRIAL BY JURY***