FILED

2017 Feb-22  PM 01:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| JEFFREY COZZI, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: 2:14-cv-1768-KOB-TMP |
| | ) |
| CITY OF BIRMINGHAM, et. al., | ) |
| Defendants. | ) |

**MEMORANDUM OF OPINION**

The magistrate judge filed a report and recommendation on August 12, 2016, recommending that the court grant the Defendants' motion for summary judgment on all of the Plaintiff Jeffrey Cozzi's claims.  (Doc. 59).  Cozzi filed objections on August 26, 2017.  (Doc. 60).

After a de novo review of the entire record in this case, including the Report and Recommendation, the objections, and all evidentiary materials submitted in support of and in response to the summary judgment motion, the court OVERRULES all of  Cozzi's objections EXCEPT those regarding whether Detective Thomas had arguable probable cause at the time he arrested Cozzi.  For the following reasons, the court ADOPTS the magistrate judge's report and ACCEPTS his recommendation on all claims EXCEPT the § 1983 false arrest claim against Detective Thomas in Count Two.

1

*Preliminary Matters*

The court agrees with the magistrate judge that it should grant the Defendant's motion for summary judgment as to Count One (unlawful search of Cozzi's home under § 1983) and Count Three (excessive force under § 1983) as to *all* Defendants for the reasons in the Report and Recommendation. (Doc. 59 fn 2).

The magistrate judge also correctly found that Cozzi concedes in his brief that the court should grant the motion for summary judgment as to any claims asserted against Officers Montgomery, Jones, or Lampley under Count Two (false arrest under § 1983).  Also, to the extent that Count Two alleges municipal liability under § 1983, the court agrees that it should grant summary judgment for the reasons stated in the Report and Recommendation.  (Doc. 59 fn 13).

Cozzi's objections involve the magistrate judge's findings regarding Detective Thomas's entitlement to qualified immunity for the false arrest claim under Count Two and the magistrate judge's finding that the court should grant summary judgment on Count Four in favor of the City of Birmingham for alleged deprivation of rights under Americans with Disabilities Act (ADA) or the Rehabilitation Act.

*False Arrest Claim Against Detective Thomas In Count Two*

The magistrate judge found that Detective Thomas was entitled to qualified

immunity on the false arrest claim because arguable probable cause existed for Detective Thomas to arrest Cozzi.  The magistrate judge based his finding on the fact that Detective Thomas had the following information before him at the time of Cozzi's arrest (doc. 59 at 20-21):

(1) Information from an Anonymous Tip–Someone called Crime Stoppers of Metro Birmingham and stated that Cozzi "*resembles* the subject featured for the bomb threat."   The caller gave no address or phone number for the subject, but stated that "the subject lives in Center Point, AL."  The caller also stated that Cozzi has a "Lori" tattoo on his right hand.  (Doc. 47-8 at 59).

(2) Information from a Confidential Informant–The confidential informant contacted Deputy Brasher with the Jefferson County Sheriff's Office, who in turn contacted the Birmingham Police Department and forwarded the information to Detective Montgomery.  The confidential informant indicated that he/she *"recognized the person"* in the video as Cozzi based on his "unique walking style, the hat and shoes he wore during the robbery of Rite Aid, and the mask was similar to the ones he uses in his line of work, car painting."  The confidential informant also stated that Cozzi was a white male who lived at 1735 6th Avenue NW; that Cozzi has a "severe addition to Lortab pain killers"; and that Cozzi drives a "purple Toyota Tacoma pick up truck."  The confidential informant

3

provided photos of Cozzi that Detective Thomas said  "closely match the video from both robberies."  Officer Osborn went to the address the confidential informant gave for Cozzi and saw a purple truck in the driveway.  The officer passed along this information to Detective Thomas to obtain a search warrant. (Doc. 47-8 at 61).

(3) Pastic Bag Containing 32 Loose Pills Found "During Search"—The magistrate judge said "because the pills were loose in a plastic bag, Detective Thomas could be reasonably suspicious that they were not lawfully prescribed to Cozzi."  (Doc. 59 at 21).  The court suspects that the magistrate judge assumed the pills were found "during the search" and *before* the arrest because the "Evidence Technician Report" listed the plastic bag of pills as being found in the "night stand in the north east bedroom."  (Doc. 47-8 at 64). Also, the "Return and Inventory" signed by Detective Thomas listed these items as found and seized during the search: (1) Pair of Addidas Tennis Shoes; (2) Plastic Bag Containing 32 pills; and (3) Locked Safes.  (Doc. 47-2 at 11).

However, Cozzi's objections take issue with the magistrate judge's assumption that Detective Thomas knew about the pills *at the time of the warrantless arrest*.  Cozzi attaches an affidavit to his objections that states that the pills were prescribed to him because of his back problems, and that he kept those

pills in his safe, which was seized during the search but not opened until after his arrest at the police station. (Doc. 60-1). Cozzie's objections explain that the pills were listed separately as contraband seized, but were actually not discovered until *after* the arrest at the police station when Cozzie opened the safe for Detective Thomas. Therefore, Cozzi claims that Detective Thomas did not have knowledge of any pills at the time of his arrest, and the magistrate judge erred in considering the pills in making its arguable probable cause determination. The court agrees.

In addition to his affidavit attached to his objections, the record supports Cozzi's contention that the pills were found in the safe at the police station *after* the arrest. In Detective Thomas's answers to interrogatories, when asked to "identify and describe all tangible objects that were retrieved from the scene of the execution of the search warrant and arrest of plaintiff and state from where they were obtained," Thomas responded: "(2) Two locked safes from the bedroom of the residence." Thomas mentioned no other tangible evidence and made no mention of the pills.

Moreover, Cozzi testified in his deposition that he had guns and prescription pills in his safe (the generic pills for Lortab and Soma). (Doc. 47-9 at 24-25). Cozzi also stated in his deposition that Detective Thomas could not open the safe, and asked Cozzi for the combination to open it. (Doc. 47-9 at 27-29).

5

Cozzi opened the safe for Detective Thomas at the police station *after* the arrest. (Doc. 47-8 at 20).

Most telling that Detective Thomas did not consider the pills in making his probable cause determination for the arrest came from Detective Thomas' own statement in his deposition.  He testified that he based probable cause for the warrantless arrest on the anonymous tip; the confidential informant's statement; Kara Antonoff's statement at the scene of the arrest identifying Cozzi as the person in the still photo from the robbery; and statements of the other parties that were present to establish that Cozzi had a dependency on narcotics.  (Doc. 47-8 at 33).  Detective Thomas did *not* state that he considered the pills as grounds for probable cause to arrest Cozzi immediately after the search of Cozzi's home. Taking the facts in the light most favorable to Cozzi, Detective Thomas did not have knowledge of the pills found during the search at the time he arrested Cozzi.

Moreover, the magistrate judge, taking the facts in the light most favorable to Cozzi, correctly found as true Kara Antonoff's affidavit stating that Detective Thomas did not show her pictures of the robber at the scene of the search and that she did not identify Cozzi as the man in the robbery still photo until *after* Cozzi's arrest.  (Doc. 59 fn 10 at 10).  Also, taking the facts in the light most favorable to Cozzi, Michael Thompson, Cozzi's roommate, did not tell Detective Thomas that

6

Cozzi was addicted to narcotics.  Thompson submitted a declaration that stated "I never said that [Cozzi] or anyone else in the house was addicted to drugs. I did tell him that I knew [Cozzi] took prescription drugs." (Doc. 50-4)).  Detective Thomas made that assumption based on Thompson's statement that Cozzi took prescription drugs, which this court finds is an unreasonable leap of facts.  The only other person that was present at the scene of the search prior to the arrest was Myleah Tidwell, who is now deceased and has no affidavit in the record.[1]

Taking the facts in the light most favorable to Cozzi, the court finds that Detective Thomas did *not* have before him at the time of Cozzi's arrest any information concerning the pills, Kara Antonoff's alleged identification at the scene of Cozzi from pictures, or Thompson's alleged statement that Cozzi was addicted to narcotics.  Detective Thomas had only the anonymous tip and confidential informant's statement at the time of Cozzi's arrest as possible inculpatory evidence upon which to base a finding of  probable cause.  Those two pieces of information alone, however, were not enough for probable cause, or even

---

[1]  Detective Thomas did *not* state that Myleah Tidwell identified Cozzi at the scene of the search or that he showed her photos.  Detective Thomas stated that "the other girl" also told him at the scene that Cozzi had a drug dependency.  Assuming that Detective Thomas considered Ms. Tidwell "the other girl," she is now deceased and cannot refute via affidavit Detective Thomas's claim.  Regardless, adding this one fact to Detective Thomas knowledge at the time of Cozzi's arrest does not change the court's opinion that Detective Thomas did not have arguable probable cause at the time of the arrest.

arguable probable cause, to *arrest* Cozzi for either robbery.

    *Arguable Probable Cause*

    Probable cause exists when "the facts and circumstances within the officer['s] knowledge, of which he . . .  has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir.2006), *cert. denied,* 550 U.S. 957 (2007). Even if an officer does not have probable cause for an arrest, an officer is entitled to qualified immunity if he had *arguable* probable cause at the time of the arrest. An officer has *arguable* probable cause to arrest "'where reasonable officers in the same circumstances and possessing the same knowledge as [the officer] could have believed that probable cause existed to arrest.'" *Carter v. Butts Co.*, 821 F.3d 1310, 1320 (11th Cir. 2016) (citations omitted).

    The court must determine whether Detective Thomas' actions were "objectively reasonable   . . . regardless of [his] underlying intent or motivation." *Id*. The court must based the reasonableness of Detective Thomas' beliefs on the facts available to him "at the moment of the arrest. . . ." *See United States v. Allison*, 953 F.2d 1346, 1350-51 (11th Cir. 1992).

    Neither the anonymous tipster nor the confidential informant positively

identified Cozzi as the robber, or had any information that linked Cozzi to the robberies *other than* that the robber in the video resembled or looked like Cozzi. Detective Thomas stated in his deposition that the police "received reports from two anonymous persons giving information that this defendant, Mr. Cozzi, *has a strong resemblance* to the persons (sic) that was shown in the video at the two respective locations."  (Doc. 47-8 at 17) (emphasis added).

Moreover, Detective Thomas stated that he did not know if the confidential informant was reliable.  When asked in his deposition "You don't have any idea whether this confidential informant was reliable or not, do you?" Detective Thomas responded "No.  I wouldn't use his–I wasn't aware of who his confidential informant was. If it had been mine, then I would be able to state." (Doc. 47-8 at 16).  Detective Thomas did *not* testify that he "assumed" the confidential informant was reliable just because another deputy had used him in the past. Instead, he stated that he had no idea if the confidential informant was reliable.

Also, looking at the totality of the circumstances in the light most favorable to Cozzi, Detective Thomas had knowledge of  possible exculpatory evidence at the time of Cozzi's arrest tending to show Cozzi may not have been the robber. Michael Thompson stated that Detective Thomas showed him a picture of the

robber from the video at the scene of the search and that Thompson said that person was *not* Cozzi because the robber had "numerous tattoos up and down his arm" and that Cozzi "has only one tattoo." (Doc. 50-4 at 1). The magistrate judge found that Thompson "told the detective *at the scene* that the robber was not Cozzi, and that Cozzi had tattoos that the robber did not have"; that "Cozzi has tattoos on his left hand"; and that "the surveillance video of the Walgreens robbery *does not show* any tattoos on the robber's left hand." (Doc. 59 at 9-10) (emphasis added). Cozzi testified in his deposition that he had that tattoo on his left hand at the time of the alleged robberies.[2] (Doc. 47-9 at 17). The picture of the robber shows no tattoo on the robber's left hand.

The court finds that a genuine issue of material fact exists regarding whether Detective Thomas' investigation of the identifying tattoos of the robber and Cozzi *before* Cozzie's arrest was reasonable. "A police officer may not 'conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts.'" *Carter v. Butts Co., Ga.*, 821 F.3d 1310, 1321 (11th Cir. 2016) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004)). "Nor may an officer 'choose to ignore information that has been offered

---

[2] Cozzi also testified at his deposition on October 2, 2015 that he had some tattoos at that time that he did not have in 2013. (Doc. 47-9 at 17).

to him or her.'" *Id*.  In determining whether an officer is entitled to qualified immunity, the court must charge the officer with "'possession of all the information *reasonably discoverable* by an officer acting reasonably under the circumstances.'" *Kingsland*, 382 F.3d at 1228 (citations omitted).  An officer may not "close his . . . eyes to facts that would clarify the circumstances of the arrest.'" *Id*. (Emphasis added).

Although the magistrate judge indicated that Detective Thomas questioned Cozzi about the tattoos, Thomas did not do so until *after* the arrest.  An officer acting reasonably under the circumstances would have investigated *before the arrest* whether Cozzi had tattoos on his left hand that did not match the left hand of the robber in the video.  Detective Thomas had the robbery video footage, the still photographs of the robber from the video, and Michael Thompson's statement regarding the discrepancies in the tattoos of the robber and Cozzi at his disposal before the arrest.  When Michael Thompson indicated to Detective Thomas prior to Cozzi's arrest that Cozzi had tattoos the robber did not have, a reasonable officer would have investigated that possible exculpatory evidence prior to arresting Cozzi.

At the time of Cozzi's arrest, Detective Thomas not only had possible exculpatory evidence involving the tattoos, but he also had no evidence

11

corroborating the information provided by the anonymous tipster or confidential informant to show that Cozzi was involved in any criminal activity.  The Supreme Court has held that "where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone."  *Whiteley v. Warden , Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971). However, the Supreme Court further explained that the additional corroborating information must show that the defendant *was connected in some way to the crime for which he is arrested*.  *Id*.

In the cases involving the lesser requirement of reasonable suspicion for a stop or probable cause for a *search* warrant, the information provided by the anonymous tipster or confidential informant involved allegations that the defendant was involved in criminal activity, not just that the defendant looked like someone in a robbery surveillance video.  *See Florida v. J.L.*, 529 U.S. 266, 272 (2000) (stating that reasonable suspicion "requires that a tip be reliable in its assertion of *illegality*, not just in its tendency to identify a determinate person"); *Illinois v. Gates*, 462 U.S. 213, 214 (1983) (anonymous tip that a husband and wife were *selling drugs* using a detailed plan involving the wife driving to Florida with the drugs and the husband flying to meet her, corroborated by police

surveillance of the couple's movements, constituted *probable cause for a search warrant* for the couple's home and car); *Alabama v. White*, 496 U.S. 325, 327 (1990) (an anonymous tip that the defendant would leave a certain location in a certain type car with a brown briefcase containing *cocaine*, corroborated by a police stakeout observing most of these facts, was enough for *reasonable suspicion* for a stop); *Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1252 (11th Cir. 1997) (an anonymous tip, corroborated by a confidential informant's tip that the defendant was in a blue and white car and was *transporting cocaine* and a police stake out of the defendant constituted enough for *reasonable suspicion* to stop the plaintiff's car); *United States v. Sullivan*, 2012 WL 3242399 (S.D. Ga. 2012) (Report and Recommendation adopted by district judge in 2012 WL 3242006 (S.D. Ga. 2012)) (anonymous tip, corroborated by a *reliable* confidential informant that the *defendant had cocaine and proceeds from the sale of narcotics inside his residence* at a particular address was enough for probable cause for a *search warrant*).

In this case, the information from the confidential informant may have corroborated the anonymous tip that the robber resembled Cozzi, but neither source gave any information that Cozzi *was actually involved in criminal activity*. Two people saying that Cozzi resembled the robber in the video was not enough at

that point for probable cause to *arrest* Cozzi for either robbery, but could constitute probable cause to search Cozzi's home on the belief that contraband from the robbery was *likely* to be found there.[3]  So, based on the information from the anonymous tipster and the confidential informant, Detective Thomas obtained a *search* warrant for Cozzi's residence to "obtain evidence associated with the robbery," including firearms, ammunition, contraband items, mask, clothing worn by the robber, an eye patch, small white straw hat, and the note used in the robbery.  (Doc. 47-8 at 63).  However, the search of Cozzi's home produced *none* of these items to associate Cozzi in any way with either robbery.

At the time of Cozzi's arrest immediately after that search, Detective Thomas had no corroborating evidence from the search of Cozzi's home to give Thomas reasonable grounds to believe that Cozzi had been involved in either robbery.[4]  Detective Thomas had a reasonable belief, based on the information provided by the anonymous tipster and the confidential informant, that evidence

---

[3] Detective Thomas admitted in his deposition that, just because you have probable cause for a search does not necessarily mean you have probable cause for an arrest.  (Doc. 47-9 at 11).

[4] Moreover, the information from the confidential informant about the purple truck cannot serve as corroborating evidence that Cozzi was involved in either robbery.  No witness implicated the truck in either robbery, and the fact that the confidential informant knew Cozzi and knew what type of truck he drove does not link Cozzi to any criminal activity.  Detective Thomas also stated that Cozzi and his girlfriend Kara Antonoff corroborated some of the information provided by the confidential informant. However, Detective Thomas admitted that this alleged corroboration came *after* the arrest because Cozzi and Antonoff did not make any statements to Detective Thomas until their interrogations at the police station.

from either robbery might be located at Cozzi's residence. However, after the search produced no evidence linking Cozzi to either crime, Detective Thomas did not have even arguable probable cause to believe that Cozzi was responsible for either robbery to justify a warrantless arrest, especially given the possible exculpatory evidence involving the tattoos.

A reasonable officer, after the search produced no additional evidence to connect Cozzi with either robbery, would have continued his investigation, or questioned Cozzi further before an arrest, which may have later produced enough evidence to support probable cause for an arrest.  At the time of the Cozzi's arrest, Detective Thomas had the exact same inculpatory evidence he had when he sought the *search* warrant, and he had possible exculpatory evidence that Cozzi was not the robber.  No reasonable officer would have resubmitted the same information from the search warrant in another affidavit to a magistrate judge for an *arrest* warrant *after the search produced no evidence* linking Cozzi to either robbery because that evidence would not have been enough for probable cause to secure an arrest warrant.

Also, between the time Detective Thomas arrested Cozzi and brought him to the police station and the next morning, Detective Thomas determined he did not have enough to pursue a formal arrest warrant and formally charge Cozzi for the

robberies.  Detective Thomas had more inculpatory evidence at that point—the pills in the locked safes— than he did when he arrested Cozzi at the scene of the search.  Looking at the totality of the circumstances and taking the evidence in the light most favorable to Cozzi, Detective Thomas did not have even  arguable probable cause at the time he arrested Cozzi.[5]

*ADA or Rehabilitation Act Claims Against the City in Count Four*

In his objections, Cozzi asserts that the magistrate judge did not acknowledge the facts in the record regarding Cozzi's complaints against the transporting officer who took him to the hospital and that the magistrate judge failed to distinguish between the various stages of the arrest in assessing this claim.  These objections lack merit.

The Magistrate Judge did acknowledge facts in the light most favorable to Cozzi about his complaints against the officer who transported him to the hospital.  (Doc. 59 at 11-12).   Moreover, the magistrate judge in fact distinguished between the various stages of the arrest and correctly found that no ADA violation occurred at the scene of the arrest or at the police station.  (Doc. 59 at 36).  In assessing the

---

[5]  Because the court finds that the facts in the light most favorable to Cozzi show that Detective Thomas did not have arguable probable cause to arrest Cozzi based on the information provided by the anonymous tipster and confidential informant alone, especially in light of the possible exculpatory evidence surrounding the tattoos, the court does not need to address Cozzi's objection regarding Detective Thomas' credibility surrounding James Hill.

facts surrounding Cozzi's police ride to the hospital, the magistrate judge correctly found that the record contained "no evidence that Cozzi told the officer who drove him to the hospital, and whom he had not sued, that he was disabled or even that he was in pain. (Doc. 59 at 37); *see also* (Doc. 47-9 at 29-33). Although the magistrate judge acknowledged that "officer did not treat Cozzi gently or with the utmost courtesy" (doc. 59 at 37), the court agrees that Cozzi produced no evidence that the officers discriminated against him *because of* his disability, assuming they knew he had one. As the magistrate judge correctly stated, because the court finds that no officer violated Cozzi's rights under the ADA, the court need not address whether the City can be vicariously liable under the ADA or whether liability attaches only where a policy, practice, or custom exists.

*Conclusion*

For the reasons previously stated, the court finds that it should:

(1) OVERRULE all of Cozzi's objections EXCEPT his objections regarding whether Detective Cedrick Thomas had arguable probable cause to arrest Cozzi;

(2) GRANT the Defendants' motion for summary judgment as to Count One (unlawful search of Cozzi's home under § 1983) and Count Three (excessive force under § 1983) as to *all* Defendants;

17

(3) GRANT the Defendants City of Birmingham, G.H. Montgomery, Detective Jones, and Detective Lampley's motion for summary judgment as to the false arrest claim in Count Two;

(4) DENY Defendant Cedrick Thomas' motion for summary judgment as to the false arrest claim in Count Two; and

(5) GRANT the Defendants' motion for summary judgment as to the ADA and Rehabilitation Act claims in Count Four.

The court will enter a separate Order.

DONE and ORDERED this 22nd day of February, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE